DAVID M. GLOVER, Judge
Mickie Richardson and Ashley Bonner have filed separate appeals from the termination of their parental rights to their three children, LR, AR, and CR. The termination order was entered on August 24, 2017, and Ashley and Mickie filed separate, timely notices of appeal. Mickie challenges the termination of his parental rights by 1) arguing generally that the Arkansas Department of Human Services' (DHS) rehabilitation efforts were not meaningful and reasonable and that DHS failed to prove a lack of compliance with the case plan, and 2) arguing that DHS did not prove it was in the children's best interest to terminate his parental rights. Ashley challenges the termination of her parental rights by 1) arguing that DHS did not prove the three statutory grounds relied upon by the trial court ("failure to remedy," "subsequent factors," and "aggravated circumstances"), and 2) arguing that DHS did not prove it was in the children's best interest to terminate her parental rights. We affirm both terminations.
Procedural History
On May 16, 2016, DHS filed a petition for emergency custody of LR, AR, and CR-the minor children of Ashley Bonner and Mickie Richardson. Monika Isenhower, a DHS child-abuse-and-neglect investigator, submitted the supporting affidavit of facts in which she alleged DHS received a hotline call on May 10, 2016. According to the affidavit, the hotline caller reported *92 LR had missed two days of school and her brother, AR, said the reason was that she had bruises; the father, Mickie, had hit AR; Mickie had also spanked AR with a belt because AR and LR had made a video where they "had sex," which AR described as kissing each other; and there was a belt mark on AR's forearm. The affidavit further alleged the mother, Ashley, agreed to bring all three children to DHS, which she did; LR was interviewed and reported she had gotten the bruises on her face from Mickie punching her three times with his fist; Ashley had told her to tell DHS she had a seizure; she and her brother AR got in trouble because they had touched each other's privates and recorded it on their uncle's phone; their uncle did not know they had done it because he was asleep when they made the phone video; and Mickie found the video on the phone. The DHS worker noted LR had bruising on both sides of her cheekbones, her upper right eyelid had a dark brown bruise on it, and she had a lighter brown bruise on the right side of her mouth on top of her upper lip. She further noted Ashley reported she told Mickie to stop but he did not. The trial court entered its original ex parte order for emergency custody on May 16, 2016. On May 19, 2016, the trial court entered a probable-cause order.
The adjudication hearing was held on July 13, 2016, after which the children were found to be dependent-neglected. That finding was based on neglect, parental unfitness, and physical abuse by Mickie and a failure to protect by Ashley. The goal of the case was reunification, and following a November 30, 2016 review hearing, a trial home placement was arranged, and the trial court ordered legal custody of the children would return to Ashley and Mickie on January 28, 2017, if the trial placement went well.
It is undisputed the trial placement went well enough for custody of the children to be returned to Ashley and Mickie. However, soon thereafter, on February 7, 2017, DHS filed a motion for ex parte emergency change of custody that contained new allegations of Mickie hitting AR. The motion was granted, and a probable-cause order was filed on February 8, 2017.
On April 14, 2017, a permanency-planning hearing was held and the goal of the case was changed to adoption. DHS filed a petition to terminate the parental rights of both Ashley and Mickie on May 8, 2017. "Failure to remedy," "subsequent factors," and "aggravated circumstances" were alleged as the statutory grounds for termination. The termination hearing was held on August 2, 2017. Following that hearing, the trial court entered the termination order on August 24, 2017.
Termination-of-Parental-Rights Hearing
At the August 2, 2017 termination hearing, the trial court heard testimony from several witnesses. Angela Davis, the caseworker for the three children, testified it was DHS's recommendation to terminate the parental rights of Ashley and Mickie. She testified she did not believe Mickie or Ashley could safely and appropriately parent the children. She explained that each of the three children was currently in separate foster homes and described their personalities and how they were doing in their foster homes. She testified each of the three children was adoptable. She also testified the parents had completed the case plan; they participated in counseling and parenting classes; and she had reviewed Dr. Faitak's psychological evaluation of Mickie in which Dr. Faitak recommended that Mickie continue to receive help with anger management and stress management. She explained the children came into care because of physical *93 abuse by Mickie, and DHS wanted to prevent the abuse from happening again. She testified the children came into care in May 2016 because Mickie physically abused LR, and they were removed again in February 2017 because Mickie physically abused AR.
Ms. Davis testified she did not believe the parents had made enough progress since the second hold had been exercised to try having the children at home again; that the most important thing for the children was to have them in a safe environment and to give them permanency. She said there was nothing about any of the children that would give her pause in saying that they were adoptable.
On cross-examination, Ms. Davis acknowledged both parents were in complete compliance with the court's orders, and she stated they had worked very, very hard to try to do everything DHS and the court had asked them to do. She subsequently clarified that the parents were ordered to demonstrate an ability to protect the children and keep them safe from harm, which was the most important goal, and they had not been successful in achieving that goal. She stated her main concern was that "it will happen again," i.e. , the physical abuse of the children. Davis testified both parents had attended every single visitation with their children; the visits "pretty much" went well; DHS could provide additional services to Mickie to help him control his anger issues but that, right now, DHS did not feel the children would be safe; she had been to their home and it was appropriate, well-organized, and clean; the children were excited to see each other and their parents at visits, and AR was sad when he did not get to go home with them; and the records showed the parents had never missed a counseling session and were never late.
Davis testified the parents were in compliance before the trial home placement; Mickie had gone to anger management classes; they had completed 12 hours of parenting classes; they had stable housing and income; and yet the trial home placement was disrupted by another situation in which Mickie abused AR.
Monika Isenhower, the DHS child-abuse-and-neglect investigator who prepared the supporting affidavit for the petition for emergency custody, testified she was involved in the second removal of the children; she was concerned about Mickie's ability to control his anger because he was about "to blow up" in the DHS office; they asked him to leave; and then he "blew up" outside the DHS office. She witnessed him kicking his vehicle, jumping into his vehicle, grabbing the steering wheel, and banging his head repeatedly against the steering wheel. She said Ashley "sat and watched this the entire time." She said Mickie drove his vehicle through the DHS parking lot, would stop and start "jerkily," and at one point she was fearful for Ashley's safety.
Monika testified she had conducted an investigation involving Mickie in 2012 that resulted in some "true findings"; criminal charges were brought against him; he chased his niece, his wife, and some other children out of the house "at the end of a shotgun"; a protective-services case was opened; he had attended some anger-management classes in 2012; she was involved with the family again in 2016; LR had bruises on her eye and on each side of her face and said her father had punched her; and she agreed with DHS's recommendation about termination of parental rights.
"Laurie," LR's foster mother, testified LR had a rough start in foster care but was doing well now; she has seizures that are being treated; and she is developmentally delayed.
*94 Theresa Driver, a licensed professional counselor, registered play therapist, licensed alcohol-and-drug counselor, and an equine-assisted psychotherapist, testified she has counseled both Mickie and Ashley individually; her counseling with them began June 7, 2016; she has had a lot of interaction with them, been in their home, and observed them with their children; she was impressed with the cleanliness and organization of the house; her observations of the parents led her to believe they were "very good parents"; Ashley was the more organized, firm parent; Mickie was more playful; the complete focus was on anger management; and she did 12 anger-management sessions with them. Driver testified she believed Mickie is a much calmer person than a year ago; Mickie and Ashley came to 24 appointments with her, never missed any of them, and were always on time; concerning return of the children to the parents, she has seen significant progress, she always thought Ashley was a good mother, Ashley has become more assertive, and Mickie has made significant progress in his anger management. She said she never saw any signs of bad parenting when she was in their home and felt strongly they were good people. She discussed her sessions with the entire family and the activities they undertook. She stated AR demonstrated behavioral issues and had temper tantrums, and she worked with the parents on techniques to handle those issues. She witnessed the parents dealing with behavioral issues and never saw displays of anger by either of them. Driver said the children were receptive to Ashley telling them what to do; Ashley was more of the disciplinarian of the two; she heard the caseworker's testimony about being afraid Mickie would abuse the children again; she believed Mickie had made significant progress with anger management, he was on medication to calm his anxiety, and he has expressed to her the fact that he has learned a lot from his mistakes. She said the children were always excited to see their parents and to be in the family setting. She testified she would have no concerns about the parents getting the children to their doctor appointments.
Driver testified she cannot predict the future; that Mickie had made significant progress; but she acknowledged she had also thought he had made significant progress before the trial home placement.
Ashley testified she wanted her children returned to her, and if the court said she needed more time, she was asking for more time. She described her interactions with her children; she did not think Mickie was a danger to her children; her children were not afraid of Mickie; she is not worried about his anger issues; she believes she and Mickie can keep the children safe from harm; and if she thought for one minute Mickie would harm her kids, she'd kick him out. She stated she has done everything asked of her; that nobody ever told her she needed to do anything else to prove she could keep her children safe or that she was doing anything wrong. Ashley's testimony indicated she did not really believe Mickie hurt AR after the children were returned to their custody; she believed the injuries were caused by a bicycle wreck.
Mickie testified he wants his kids to come home. He said he does not consider himself to be an angry person; if he gets angry now he takes time to stop, think about what he's doing, take a walk, take breaths, and count backwards-techniques he learned in counseling. He said he is also motivated not to hurt the kids because he is on probation, it would be revoked, and he would be looking at 20 years in prison. He acknowledged it was more important to consider the effect it would have on the kids. He thinks he is a different person from the one when the children were taken *95 away. He told the court he loves and misses his children.
Mickie denied that his sister's children are also in foster care because she physically abused them, but he acknowledged that she has a key to his house. He acknowledged that in 2012 he was convicted of aggravated assault and that in 2016 he was convicted of domestic battery involving LR.
Karen, a CASA representative, testified she had been assigned to this case for about a year and a half; the report she was submitting was based on the work she did on the case; and she made no recommendation either way about the termination of parental rights.
Standard of Review
We review termination-of-parental-rights cases de novo, and we will not reverse the trial court's findings unless they were clearly erroneous. Holloway v. Arkansas Dep't of Human Servs. , 2017 Ark. App. 669, 535 S.W.3d 693. A finding is clearly erroneous if, after reviewing the entire record, we are left with a definite and firm conviction that the trial court made a mistake. Id. We give due deference to the trial court's superior position to observe the parties and judge the credibility of the witnesses. Id.
The Termination of Mickie's Parental Rights
The termination of parental rights must be based upon clear and convincing evidence that 1) at least one of the statutory grounds for termination has been established, and 2) the termination is in the best interest of the juveniles. Id. Only one statutory ground must be proved to support the termination of parental rights. Id.
Mickie's parental rights were terminated based on the trial court's finding of three statutory grounds: "failure to remedy" ( Ark. Code Ann. § 9-27-341(b)(3)(B)(i) ) (Supp. 2017), "subsequent factors" ( Ark. Code Ann. § 9-27-341(b)(3)(B)(vii) ), and "aggravated circumstances" ( Ark. Code Ann. § 9-27-341(b)(3)(B)(ix) ). For his first point of appeal, Mickie contends DHS did not make meaningful and reasonable efforts to rehabilitate him and failed to prove he did not comply with the case plan. He does not focus his argument on any specific statutory ground. A major problem with his first point of appeal is that only two of the statutory grounds relied upon by the trial court require as elements of proof meaningful reunification services by DHS-"failure to remedy" and "subsequent factors." "Aggravated circumstances," on the other hand, does not require proof that DHS provided meaningful or appropriate reunification services to Mickie.
"Aggravated circumstances" means in pertinent part, that "a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification[.]" Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(3)(B)(2). In addressing the "aggravated circumstances" ground, the trial court explained: "When the goal of reunification in this case was realized, Father committed similar acts of abuse, and mother failed to protect the children, resulting in a second removal. As such, it is highly unlikely that continued services will result in successful reunification." We see no clear error in the trial court's finding that the "aggravated circumstances" ground had been proved. More importantly, because Mickie's argument does not apply to "aggravated circumstances," and thus that ground is not challenged by him, we affirm on that unchallenged ground alone, *96 Benedict v. Arkansas Dep't of Human Servs. , 96 Ark. App. 395, 242 S.W.3d 305 (2006), and do not address the merits of Mickie's arguments concerning "failure to remedy" and "subsequent factors."
For his final point of appeal, Mickie contends DHS did not prove termination of his parental rights was in the best interest of LR, AR, and CR. We disagree.
In making a best-interest determination, the trial court must consider 1) the likelihood of adoptability and 2) the potential for harm if the children are returned to their parents' custody. Holloway, supra.
Here, the caseworker had no qualms about testifying that the children were adoptable. Moreover, the fact the children had to be taken a second time, after anger-management training and a trial home placement, for the same reason they were removed initially-physical abuse by Mickie-is convincing evidence that there was a potential for harm.
The Termination of Ashley's Parental Rights
For her first point of appeal, Ashley contends the trial court erred in terminating her parental rights because there was insufficient evidence offered to prove the three statutory grounds supporting the termination order. We disagree.
Because proof of only one statutory ground is sufficient to support the termination of parental rights, id. , we address only the "aggravated circumstances" ground. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix). For the most part, the termination of Ashley's parental rights is not based on her affirmative actions, i.e. , she did not physically abuse any of her children; rather, she failed to protect her children from the harm inflicted by Mickie. As discussed previously regarding this statutory ground as it pertained to Mickie, the trial court explained that when the initial goal of reunification had been realized and the children were returned to Ashley and Mickie, Mickie committed similar acts of abuse and Ashley once again failed to protect her children, which resulted in the second removal. Further, at the termination hearing, Ashley expressed no worries about Mickie's anger issues, and it was clear she was not convinced Mickie had hurt AR when the children were returned to their custody, believing instead that the injuries were caused by a bicycle wreck. We are not left with a definite and firm conviction that the trial court made a mistake in finding that DHS had proved the statutory ground of "aggravated circumstances."
For her remaining point of appeal, Ashley contends the trial court erred in concluding that termination of her parental rights was in the children's best interest. As previously discussed with respect to Mickie's termination, the likelihood of adoption was clear, as was the potential for harm if the children were returned to their parents.
Affirmed.
Abramson and Murphy, JJ., agree.