Cite as 2019 Ark. App. 497

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-19-545

| | |
|---|---|
| | **Opinion Delivered**  October 30, 2019 |
| RACHEL HAMPTON AND DANTE ST. MICHAEL | |
| | APPEAL FROM THE SCOTT COUNTY CIRCUIT COURT |
| APPELLANTS | [NO. 64JV-17-37] |
| V. | HONORABLE TERRY SULLIVAN, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | |
| | AFFIRMED AS TO RACHEL HAMPTON; AFFIRMED AND MOTION TO WITHDRAW |
| APPELLEES | GRANTED AS TO DANTE ST. MICHAEL |

## N. MARK KLAPPENBACH, Judge

Appellant Rachel Hampton appeals from the April 2, 2019 order of the Scott County Circuit Court terminating her parental rights to her three children: her daughter KA, her son EA, and her son HSM.[1]  Rachel's counsel has filed a merit-based brief arguing that the circuit court's finding that statutory grounds were proved is clearly erroneous.  Appellant Dante St. Michael appeals from the same order that terminated his parental rights to his son HSM.  Dante's attorney has filed a no-merit brief and a motion to withdraw as counsel pursuant to Rule 6-9(i) (2019) of the Rules of the Arkansas Supreme Court and Court of Appeals and *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194

---

[1]The parental rights of KA and EA's father, Floyd Anderson, were also terminated, but he does not appeal.

S.W.3d 739 (2004). The clerk of this court mailed Dante a certified copy of his counsel's motion and brief, informing him of his right to file pro se points for reversal, but Dante filed no such points. In Rachel's appeal, we affirm the circuit court's order because it is not clearly erroneous. In Dante's appeal, we grant counsel's motion to withdraw and affirm the termination order because counsel is correct that there is no issue of arguable merit to raise on appeal.

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. *Houseman v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 227, 491 S.W.3d 153. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the juvenile will be adopted and of the potential harm caused by returning custody of the child to the parent. *Id.* These must be proved by clear and convincing evidence, which is the degree of proof that will produce in the fact-finder a firm conviction regarding the allegation sought to be established. *Id.* We review termination-of-parental-rights cases de novo. *Id.* The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* We defer to the circuit court on matters of witness credibility. *Id.*

The evidence in this case, as it relates to Rachel and Dante, is as follows. Rachel and Dante lived together in Boles, Arkansas, a rural area in west central Arkansas. The

2

children were taken into the custody of the Department of Human Services (DHS) in mid-December 2017, days after HSM's birth. Rachel used methamphetamine throughout her pregnancy. HSM had tested positive for methamphetamine and amphetamine, he was being given intravenous antibiotics, and he was on oxygen because he could not breathe on his own. Rachel grew, smoked, and sold marijuana and allowed EA, who was only about four years old, to be exposed to or use drugs. KA, who was about seven years old, reportedly had observed her mother have sexual intercourse and use drugs. Rachel would not get up to ensure KA attended school, so a concerned neighbor had taken KA into her home during the week.

At the adjudication hearing in January 2018, Rachel stipulated to a finding that her children were dependent-neglected, and she was ordered to comply with certain case-plan requirements that included drug testing, parenting classes, a psychological evaluation, counseling, and obtaining and maintaining appropriate housing and employment. Dante was not found to have contributed to the initiating cause of dependency-neglect, but he was ordered to comply with the same case-plan requirements as Rachel.

In April 2018, the matter was reviewed, at which time both Rachel and Dante were complying with the case plan. Dante was ordered to pay $26 per week in child support for HSM. The circuit court declined to order Rachel to pay child support for her children.

The matter was reviewed again in July 2018. All three children had been placed together in the same foster home. Rachel and Dante had not fully participated in reunification services, so they were deemed noncompliant. Rachel was ordered to stop all illegal drug use, maintain sobriety, obtain appropriate housing, and arrange for the

3

reinstatement of her driver's license. Rachel had started inpatient drug treatment at the end of June 2018. Dante was ordered to submit to a hair-follicle drug screen.

In December 2018, a permanency-planning hearing was conducted. Rachel and Dante were not in compliance as neither had completed drug treatment and counseling, and they did not have appropriate housing. Rachel's only employment was "gathering eggs," and she did not have a driver's license or transportation. Although she had completed inpatient treatment in August 2018, she had not complied with the aftercare plan. She was scheduled for an outpatient assessment twice but canceled both appointments. Dante had not attended visitation regularly, he did not complete outpatient drug treatment, and he had been arrested in July 2018 on drug-related charges. The goal was changed to termination of parental rights and adoption based on the parents' failure to demonstrate meaningful progress.

DHS filed a petition to terminate parental rights in February 2019 alleging the following statutory grounds: (1) out of custody of the custodial or noncustodial parent for one year and failure to remedy; (2) failure to provide material support or to maintain meaningful contact with the children; (3) subsequent other factors; (4) being sentenced to a substantial period of the child's life; and (5) aggravated circumstances, meaning little likelihood that further services would result in reunification. *See* Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2017). DHS also alleged that it was in the children's best interest to terminate all parental rights because the children were adoptable, and even if they were not adoptable, there was great potential harm in returning them to the parents because they

4

were drug abusers and unable to provide even the most basic needs, and one parent (Dante) was incarcerated.

The termination hearing was conducted in March 2019. Rachel tested positive for methamphetamine and amphetamine a week prior to this hearing, and she admitted using methamphetamine in January 2019. Rachel acknowledged that she is an addict, that she had not yet overcome her problem with meth, and that she had not done anything in the last six or seven months to address her drug addiction. She said she rescheduled her most recent assessment appointment because she woke up late. She said she had worked a long time as an egg gatherer making $150 to $200 per week, but she knew it was not enough to support her family. She was aware she needed to obtain a better residence or fix the one she was in to make it appropriate for her children; however, she did not want to move. Rachel added that she would have to pay a $3,000 cash bond to Yell County to get her driver's license reinstated, which was money she did not have, and this was another reason she did not want to move. Rachel wanted more time, perhaps up to four more months, in order to be ready to have her children.

Dante, who was incarcerated, had pleaded guilty to his criminal charges and had been sentenced to two years in prison and four years of suspended imposition of sentence for felony possession of drug paraphernalia; one year for resisting arrest; and one year for possession of Xanax. Dante also asked for more time to reunify with his son, HSM. He said that he initially worked the case plan, took parenting classes, and attended some therapy, but he admitted he had decided to back away from working on this DHS case when he was charged criminally. He had not visited HSM in months, although he had not been

incarcerated all that time. He hoped Rachel could regain custody of the children, he wanted to get out of the way to better Rachel's chances, and he wanted to pay child support, even though he was presently about two or three months behind in paying child support for HSM.

The family service worker, Ruthann Murphy, testified that the major issue in this case was drug use, particularly the mother's drug use that exposed baby HSM to drugs in utero and her exposing her other children to drug use in the home. Ruthann described the home where Rachel and Dante lived as a "travel trailer" that was basically one long dirty and cluttered room with bunkbeds, a stove fueled with a propane tank, and a five-gallon bucket with a potty chair serving as their toilet. Although Ruthann had been told that they were building a house not too far away, she observed no progress in construction. Ruthann said that there was insufficient income to support the family, they did not have a vehicle, and Rachel did not have a driver's license. Ruthann described Rachel as argumentative about having to participate in drug-treatment aftercare; she did not see why she was expected to do aftercare. Ruthann had told Dante that his criminal charges were detrimental to the possibility of his reunifying with HSM, but she denied ever telling him that he should just give up. She said that after he was charged, Dante refused to participate in any further services, and his visits decreased.

Ruthann testified that all the children were adoptable, enhanced by their being young, happy, healthy, active, and pleasant. They were adjusting very well in foster care. HSM had recovered from his initial medical issues at birth. EA did not exhibit problems from his having been exposed to drugs. Ruthann opined that even if the children were not

adoptable, the parents' continued drug use, lack of appropriate housing, and lack of income posed harm that outweighed any issue of adoptability. She said that even if given more time to improve their circumstances, there was no indication that the parents would do anything.

The CASA, Michelle Gill, testified that she had concerns that Rachel did not show the children attention or affection during her once-per-week visitation, even after she was informed that she should try to engage more with the kids. Gill also had concerns that Rachel brought the children candy every visit, despite being urged to bring fruit or other healthy snacks.

The circuit court found that DHS had proved four of the five alleged statutory grounds against the parents.[2] The circuit court remarked that this was a sad case, but DHS had offered a myriad of services "to no avail." Rachel had failed to complete aftercare regarding her drug problem, she tested positive for drugs and admitted recent drug use, she had no driver's license and was facing a warrant for her arrest, and she had insufficient income and inadequate housing. Dante had stopped working the case plan when he picked up additional criminal charges, he lacked appropriate housing, he was presently incarcerated, he lacked a driver's license, and he failed to provide material support to his son. The circuit court also found that it was in the children's best interest to terminate parental rights, having considered that there were no impediments to their adoption and there was potential harm

---

[2]The statutory grounds were (1) out of custody of the custodial or noncustodial parent for one year and failure to remedy; (2) failure to provide material support or to maintain meaningful contact with the children; (3) subsequent other factors; and (4) aggravated circumstances, meaning little likelihood that further services would result in reunification.

given the parents' substance-abuse problems. The circuit court specifically found the DHS caseworker to be credible. This appeal followed.

In her merit brief, Rachel argues that there is insufficient evidence to support any of the statutory grounds for termination. She does not contest the circuit court's best-interest finding. Proof of only one statutory ground is sufficient to support the termination of parental rights. *Bonner v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 142, 544 S.W.3d 90. We address only the "aggravated circumstances" ground found in Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)*, meaning in this case that there was little likelihood that further services would result in successful reunification. Rachel's argument, distilled to its essence, is her contention that she had only one slip up by using drugs in January 2019 and that her other failures (lack of driver's license, lack of adequate income, and lack of appropriate housing) were a direct consequence of poverty, which should not suffice to terminate parental rights.

Rachel likens her situation to that in *Kight v. Arkansas Department of Human Services*, 87 Ark. App. 230, 189 S.W.3d 498 (2004), in which this court reversed a termination order when the evidence was that, notwithstanding a one-time relapse, Kight remained clean and sober for over six months, had maintained full-time employment, and had completed everything that was required of her in the year that the DHS case had been open. Kight's therapist testified that Kight had accepted drug treatment again after her one-time relapse and that Kight did not need any more drug treatment.

Rachel's case is easily distinguishable. This DHS case had been open since December 2017, fifteen months. Rachel did not follow through with aftercare and, in fact, did nothing to address her drug addiction following her completion of inpatient drug treatment in

8

August 2018.  Rachel admittedly used meth in January 2019, more than a year after her children had come into DHS custody. She did not want to move even though her home was admittedly unsuitable for her children, and she had not followed through with assurances that she and Dante were constructing a viable home. The caseworker never saw progress in building the alternative residence. Rachel knew that she was not making enough money to support a family. Rachel asked for about four more months in order to become ready to regain custody of her children.

Rachel's request for more time was contrary to the Juvenile Code's stated purpose of reunifying children with their families if it can be accomplished in a reasonable period of time, viewed from the children's perspective.  *See* Ark. Code Ann. § 9-27-341(a)(3).  Her sobriety could reasonably be questioned as fragile. *See Hollinger v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 458, 529 S.W.3d 242.  The circuit court's weighing the evidence differently than the parents wanted it weighed is not reversible error. *Cox v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 202, 462 S.W.3d 670.  To reverse as Rachel suggests would require this court to act as a super fact-finder or second-guess the circuit court's credibility determination, which is not our function. *Allen v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 136, 540 S.W.3d 742.  The circuit court's finding that DHS proved statutory grounds against Rachel is not clearly erroneous.

Moving to Dante's appeal, we agree with counsel that there is no issue of arguable merit to support an appeal.  Counsel correctly states that the only adverse ruling was the decision to terminate Dante's parental rights, which requires proof of statutory grounds and that it is in the child's best interest to do so.  Focusing on the "aggravated circumstances"

ground, there could be no issue of arguable merit. Although Dante completed some case-plan requirements (parenting classes, a psychological evaluation, a drug/alcohol assessment, and four outpatient sessions), Dante was arrested for drug-related charges about six months after this DHS case began, and he admittedly quit participating thinking that this would improve Rachel's chances at reunification. He quit visiting his son and had not addressed the inadequate housing, lack of income, and lack of transportation. He was incarcerated on a two-year prison sentence to be followed by four years of suspended imposition of sentence. There is no clear error in the circuit court's finding that there was little likelihood that the provision of further services to Dante would result in a successful reunification, and no issue of arguable merit could be raised on that finding.

Dante's counsel also asserts that there could be no issue of arguable merit on the court's best-interest finding, and we agree. The caseworker testified about the potential harm to the children if returned to their parents' custody, and Dante was not in any position to regain custody due to his incarceration, his inability to provide adequate shelter, and his failure to provide child support as ordered. The circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Ross v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 503, 529 S.W.3d 692. Potential harm must be viewed in broad terms, and "potential" necessarily means that the court is required to look to future possibilities. *Id*. A parent's past behavior is often a good indicator of future behavior and may be viewed as a predictor of likely potential harm should the child be returned to the parent's care and custody. *Rickman v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 261, 548 S.W.3d 861. Additionally, there was more than sufficient evidence of adoptability given the

testimony of the caseworker. *Boomhower v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 397, 587 S.W.3d 231. There is no issue of arguable merit as to whether it was in HSM's best interest to terminate Dante's parental rights.

Affirmed as to Rachel Hampton; affirmed and motion to withdraw granted as to Dante St. Michael.

HARRISON and SWITZER, JJ., agree.

*Lightle, Raney, Streit & Streit, LLP*, by: *Jonathan R. Streit*, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.